# IN THE UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

| | | |
|---|---|---|
| ERIC BLACKMON, | ) | |
| | ) | |
| Plaintiff-Appellee | ) | Appeal from the United States |
| | ) | District Court, Northern District of |
| v. | ) | Illinois, Eastern Division |
| | ) | |
| GREGORY JONES, JAMES SANCHEZ, | ) | Case No. 19-C-0767 |
| and EUGENE SCHLEDER, | ) | |
| | ) | Hon. Lindsay C. Jenkins |
| Defendants-Appellants, | ) | |
| | ) | |
| CITY OF CHICAGO, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## PETITION FOR PANEL REHEARING AND REHEARING EN BANC

Ronald S. Safer (rsafer@rshc-law.com)
RILEY SAFER HOLMES & CANCILA LLP
1 South Dearborn Street, Suite 2200
Chicago, Illinois 60603
(312) 471-8700 (tel)
(312) 471-8701 (fax)

*Counsel for Appellee Eric Blackmon*

Save As | Clear Form

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 23-3288

Short Caption: Eric Blackmon v. Gregory Jones, et al.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Eric Blackmon

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Riley Safer Holmes & Cancila, LLP

(3) If the party, amicus or intervenor is a corporation:

    i) Identify all its parent corporations, if any; and

        None

    ii) list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        None

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

None

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

None

---

Attorney's Signature: /s/ Ronald S. Safer      Date: April 4, 2025

Attorney's Printed Name: Ronald S. Safer

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☑   No ☐

Address: Riley Safer Holmes & Cancila LLP

     1 S. Dearborn Street, Suite 2200, Chicago, IL 60603

Phone Number: 312-471-8700      Fax Number: 312-471-8701

E-Mail Address: rsafer@rshc-law.com

rev. 12/19 AK

# TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................... 1

BACKGROUND ..................................................................................... 2

ARGUMENT ......................................................................................... 5

    A.    The Panel's Conclusion That *Vega* Eliminated §1983 Claims for Unduly Suggestive Identification Procedures That Taint A Criminal Case Is Wrong. ..................................................... 5

    B.    The Panel's Causation Analysis Conflicts with §1983, and Supreme Court, Seventh Circuit, and Sister Circuit Precedents. .......... 9

    C.    The Panel Decision Contradicts Established Qualified Immunity Law ....................................................................................... 13

CONCLUSION ..................................................................................... 15

Page

**CASES**

*Adickes v. S.H. Kress & Co.,*
398 U.S. 144 (1970) ......................................................................... 11

*Alexander v. South Bend,*
433 F.3d 550 (7th Cir. 2006) ............................................... *passim*

*Antonio v. Moore,*
174 F.App'x 131 (4th Cir. 2006) ........................................................ 6

*Armstrong v. Daily,*
786 F.3d 529 (7th Cir. 2015) ...................................................... 1, 14

*Avery v. Milwaukee,*
847 F.3d 433 (7th Cir. 2017) ...................................................... 1, 12

*Blackmon v. Williams,*
823 F.3d 1088 (7th Cir. 2016) ..................................................... 2, 3

*Bolden v. Pesavento,*
2024 WL 1243004 (N.D. Ill. Mar. 23, 2024) ..................................... 6

*Brady v. Maryland,*
373 U.S. 83 (1963) ............................................................................. 5

*Brewster v. Shasta Cnty.,*
27 F.App'x 908 (9th Cir. 2001) (unpublished)................................. 15

*Brooks v. Walls,*
279 F.3d 518 (7th Cir. 2002) ............................................................ 6

*Brown v. Mississippi,*
297 U.S. 278 (1936) ..................................................................... 8, 11

*Censke v. United States,*
947 F.3d 488 (7th Cir. 2020) ............................................................ 6

*Chavez v. Martinez,*
538 U.S. 760 (2003) ................................................................. 1, 8, 11

*City of Canton v. Harris,*
489 U.S. 378 (1989) ......................................................................... 11

*Coleman v. Peoria,*
925 F.3d 336 (7th Cir. 2019) ........................................................ 5, 6, 8

*Crowe v. San Diego,*
608 F.3d 406 (9th Cir. 2010) ................................................................. 13

*Dennis v. Sparks,*
449 U.S. 24 (1980) .................................................................................. 12

*Donald v. Outlaw,*
2023 WL 2346270 (N.D. Ind. Mar. 3, 2023) ........................................ 6

*Fields v. Wharrie,*
740 F.3d 1107 (7th Cir. 2014) ........................................................ 12, 14

*Gillispie v. Miami Twp., Ohio,*
18 F.4th 909 (6th Cir. 2021) .................................................................. 14

*Good v. Curtis,*
601 F.3d 393 (5th Cir. 2010) ................................................................. 15

*Grant v. Long Beach,*
315 F.3d 1081 (9th Cir. 2002) ................................................................. 6

*Gregory v. Louisville,*
444 F.3d 725 (6th Cir. 2006) ...................................................... 6, 13, 15

*Hensley v. Carey,*
818 F.2d 646 (7th Cir. 1987) ...................................................... 1, 5, 6, 9

*Hernandez v. Terrones,*
397 F.App'x 954 (5th Cir. 2010) ............................................................. 6

*Holloway v. Milwaukee,*
43 F.4th 760 (7th Cir. 2022) ........................................................... 5, 7, 8

*Johnson v. Jones,*
515 U.S. 304 (1995) ................................................................................. 5

*Jones v. Chicago,*
856 F.2d 985 (7th Cir. 1988) ............................................................ 1, 12

*Malley v. Briggs,*
475 U.S. 335 (1986) .......................................................................... 1, 11

*Manson v. Brathwaite,*
432 U.S. 98 (1977) ................................................................ 1, 8, 13, 15

*Manuel v. Joliet,*
580 U.S. 357 (2017) ................................................ 11

*Milwaukee & St. P.R. Co. v. Kellogg,*
94 U.S. 469 (1876) ................................................ 10

*Mitchum v. Foster,*
407 U.S. 225 (1972) ................................................ 9

*Monell v. New York Department of Social Services,*
436 U.S. 658 (1978) ................................... 9, 10, 11

*Monroe v. Pape,*
365 U.S. 167 (1961) ............................... 1, 10, 13

*Moran v. Calumet City,*
54 F.4th 483 (7th Cir. 2022) ................................ 5

*Nieves v. Bartlett,*
587 U.S. 391 (2019) ................................................ 10

*Pace v. Des Moines,*
201 F.3d 1050 (8th Cir. 2000) .............................. 6

*Rehberg v. Paulk,*
566 U.S. 356 (2012) ................................................ 11

*Saucier v. Katz,*
533 U.S. 194 (2001) ................................................ 13

*Simmons v. United States,*
390 U.S. 377 (1968) ................................... *passim*

*Staub v. Proctor Hospital,*
562 U.S. 411 (2011) ............................... 1, 10, 11

*Stinson v. Gauger,*
868 F.3d 516 (7th Cir. 2017) (*en banc*) ................ 2

*Stoot v. City of Everett,*
582 F.3d 910 (9th Cir. 2009) .............................. 13

*Stovall v. Denno,*
388 U.S. 293 (1967) ................................... 14, 15

*Swanigan v. Chicago,*
881 F.3d 577 (7th Cir. 2018) .............................. 5, 8

*Taylor v. Ways,*
   999 F.3d 478 (7th Cir. 2021) ................................................. 14

*Vega v. Tekoh,*
   597 U.S. 134 (2022) ................................................. *passim*

*Washington v. Boudreau,*
   2022 WL 4599708 (N.D. Ill. Sept. 30, 2022)........................... 6

*Whitlock v. Brueggemann,*
   682 F.3d 567 (7th Cir. 2012) ........................................... 1, 12

*Woodring v. Jackson County,*
   986 F.3d 979 (7th Cir. 2021) ................................................. 6

*Wray v. New York,*
   490 F.3d 189 (2d Cir. 2007)................................................. 6

## STATUTES

42 U.S.C. §1983................................................. *passim*

## RULES

Cir. R. 40(e) ................................................. 6

## RULE 40(b)(2) STATEMENT

Consideration by the full Court is necessary because the panel decision conflicts with decisions of the U.S. Supreme Court. *See Vega v. Tekoh*, 597 U.S. 134 (2022); *Staub v. Proctor Hospital*, 562 U.S. 411 (2011); *Chavez v. Martinez*, 538 U.S. 760 (2003); *Malley v. Briggs*, 475 U.S. 335 (1986); *Manson v. Brathwaite*, 432 U.S. 98 (1977); *Simmons v. United States*, 390 U.S. 377 (1968); *Monroe v. Pape*, 365 U.S. 167 (1961).

Additionally, the panel decision contradicts decisions of this Court. *See Avery v. Milwaukee*, 847 F.3d 433 (7th Cir. 2017); *Armstrong v. Daily*, 786 F.3d 529 (7th Cir. 2015); *Whitlock v. Brueggemann*, 682 F.3d 567 (7th Cir. 2012); *Alexander v. South Bend*, 433 F.3d 550 (7th Cir. 2006); *Jones v. Chicago*, 856 F.2d 985 (7th Cir. 1988); *Hensley v. Carey*, 818 F.2d 646 (7th Cir. 1987). Rehearing is necessary to maintain uniformity of this Court's decisions.

The panel decision also conflicts with numerous decisions of other U.S. courts of appeals, as outlined below.

And the appeal presents exceptionally important questions: Whether police officers who secure corrupted identifications using unduly suggestive identification procedures, which prosecutors foreseeably use in criminal cases to obtain wrongful convictions, can be liable for violating due process under 42 U.S.C. §1983.

## INTRODUCTION

Eric Blackmon was wrongfully convicted of the 2002 murder of Tony Cox based solely on two misidentifications obtained by police misconduct. Blackmon spent 16 years imprisoned. After being exonerated and declared innocent by the State of

Illinois, Blackmon sued under 42 U.S.C. §1983. He alleged, in part, that police detectives ("Defendants") violated his rights to due process and a fair trial by generating the misidentifications through unduly suggestive identification procedures that were introduced against him at trial.

The district court denied summary judgment, and Defendants appealed. On the due process theory subject to appeal, for using unduly suggestive identification procedures that tainted the criminal case, the panel reversed. The panel held incorrectly that: (1) *Vega* eliminated § 1983 claims for due process violations caused by suggestive identification procedures that taint a criminal trial; (2) police cannot cause a violation of due process in a criminal case when prosecutors use corrupted identifications obtained by police in a criminal trial; and (3) it was not clearly established in 2002 that police could be held liable for using suggestive identification procedures. Rehearing and rehearing *en banc* is warranted because each holding contradicts Supreme Court and Circuit precedents and splits with other courts of appeals.

## BACKGROUND

The facts are from the district court's review of the record, with inferences drawn for Blackmon. *Stinson v. Gauger*, 868 F.3d 516, 522-28 (7th Cir. 2017) (*en banc*). A. 1-53; R. 178-182.

In July 2002, two men killed Tony Cox outside a restaurant in Chicago. A.7. Blackmon was at a barbeque a mile away and had nothing to do with the crime. *Id.*; R. 181 ¶ 166. Blackmon had no motive to kill Cox and no physical evidence implicated him. *Blackmon v. Williams*, 823 F.3d 1088, 1107 (7th Cir. 2016).

Blackmon was nevertheless prosecuted. The case against him "heav[ily] reli[ed] on the eyewitness identifications of two strangers." *Id.* Both Frencshun Reece and Lisa McDowell were driving by when Cox was shot. A.7. They observed the perpetrators for just seconds, did not get good views, and could provide only minimal descriptions. A. 7-8, 11; R. 181 ¶¶ 4-9, 161; R. 178 ¶¶ 15-18, 43-45.

Defendants showed Reece two books of photographs at the police station. A. 9-10; R. 181 ¶ 52; R. 178 ¶ 29. She did not recognize any of the photos as the perpetrators, though she pointed to braids worn by one person in a photo as being similar to the hairstyle of one perpetrator. *Id.*

Later, Defendants showed Reece a photo array. A. 11-12. They told her if she did not view the photos and go to court, her kids would be taken into foster care. *Id.*; R. 181 ¶¶ 91-92. Reece did not identify Blackmon, and said she recognized his photograph only as one Defendants had shown her previously. *Id.* Defendants falsely reported that Reece identified Blackmon. A. 11-12; R. 178 ¶ 50.

Meanwhile, Defendants showed McDowell a photo array, which included a picture of Blackmon wearing braids. A. 11; R. 181 ¶¶ 62,72; R. 178 ¶ 108. McDowell had initially described the shooter as tall, slender, and having braided hair. A. 11. The array prepared by Defendants included one photo of a person with braids— Blackmon's. *Id.*; R. 181 ¶72. McDowell misidentified Blackmon as a result.

Defendants then put Blackmon in a live lineup. A. 12-13. Again, Blackmon was the only person with braids; he further stood out as the tallest and skinniest person. R. 181 ¶¶ 102-04; R. 182 at 18. Reece said she did not recognize anyone in the lineup

as the perpetrator, but noted that Blackmon was the person whose photo Defendants had shown her previously. A.13. After the lineup, Defendants said, "We got the shooter." *Id*.; R. 181 ¶ 110. Reece told them they had the "wrong guy," yet Defendants falsely reported that Reece identified Blackmon. R. 182 at 40; R. 181 ¶110. Reece later said the person she was asked to identify at trial was "the same guy they kept shoving down my throat." A. 10.

Before Defendants showed McDowell the same lineup, they told her the suspect was in the lineup. A. 12; R. 181 ¶ 99. They also showed her photos of the crime scene and victim, motivating her to help identify the shooter. A. 38; R. 181 ¶ 101; R. 178 ¶ 114. McDowell erroneously selected Blackmon from the lineup. A. 12, A. 38; R. 181 ¶ 105. Defendants falsely told her other witnesses also selected Blackmon. *Id*.

At Blackmon's trial, prosecutors relied on the tainted misidentifications. A. 31 n.18, A. 32-33; R. 178 ¶¶ 95-99, 108-112; R. 181 ¶¶121-135; R. 182 at 9. The lead prosecutor testified that the State's case against Blackmon was entirely dependent on these identifications, and no other evidence linked Blackmon to the shooting. R. 181 ¶¶ 121-135.

Blackmon obtained habeas relief in 2018. A.1. Prosecutors dropped the murder charges against him in 2019, and he received a Certificate of Innocence in 2020. *Id*.; R.181 ¶ 166.

At summary judgment, the district court denied Defendants' motions, concluding genuine disputes of material fact existed on Blackmon's due process

theories that Defendants: (1) knowingly fabricated Reece's identification, *Moran v. Calumet City*, 54 F.4th 483, 498 (7th Cir. 2022); (2) suppressed material exculpatory and impeachment evidence related to Reece's identification, *Brady v. Maryland*, 373 U.S. 83 (1963); and (3) obtained corrupted identifications using unduly suggestive identification procedures, which tainted Blackmon's criminal trial, *Simmons v. United States*, 390 U.S. 377, 384 (1968). Defendants asserted qualified immunity from Blackmon's third theory, R. 197 at 40-41, and when the district court denied them qualified immunity, they appealed, *Johnson v. Jones*, 515 U.S. 304 (1995).

## ARGUMENT

### A. The Panel's Conclusion That *Vega* Eliminated §1983 Claims for Unduly Suggestive Identification Procedures That Taint A Criminal Case Is Wrong.

The panel's conclusion that *Vega* eliminated § 1983 claims for unduly suggestive identification procedures that violate due process is contrary to Supreme Court and Seventh Circuit precedents. For decades, a plaintiff in the Seventh Circuit could pursue a §1983 claim against a police officer who obtained an "unreliable identification" with "unduly suggestive identification procedures," when that identification "undermined the fairness of [the plaintiff's criminal] trial." *Alexander*, 433 F.3d at 555-56; *Holloway v. Milwaukee*, 43 F.4th 760, 766 (7th Cir. 2022); *Coleman v. Peoria*, 925 F.3d 336, 347 (7th Cir. 2019); *Swanigan v. Chicago*, 881 F.3d 577, 583 (7th Cir. 2018); *Hensley v. Carey*, 818 F.2d 646, 648 (7th Cir. 1987). Though the "Constitution does not require that police lineups, photo arrays, and witness interviews meet a particular standard of quality," it does "guarantee the right to a

fair trial . . . and that right is violated if unduly suggestive identification techniques are allowed to taint the trial." *Alexander*, 433 F.3d at 555.[1]

District courts in this Circuit, before and after *Vega*, have applied these precedents to allow plaintiffs to pursue §1983 claims against police officers who obtain corrupted witness identifications using impermissibly suggestive identification procedures, which in turn taint the plaintiff's criminal case. *E.g.*, *Bolden v. Pesavento,* 2024 WL 1243004, at *18-19 (N.D. Ill. Mar. 23, 2024); *Donald v. Outlaw*, 2023 WL 2346270, at *11-12 (N.D. Ind. Mar. 3, 2023); *Washington v. Boudreau*, 2022 WL 4599708, at *22-23 (N.D. Ill. Sept. 30, 2022).

The panel was likewise bound by this Circuit's precedents in *Alexander*, *Coleman*, and *Hensley*, "unless and until they have been overruled or undermined by the decisions of a higher court," *Woodring v. Jackson County*, 986 F.3d 979, 993 (7th Cir. 2021), and this Court "does not overrule itself silently." *Censke v. United States*, 947 F.3d 488, 492 (7th Cir. 2020); *Brooks v. Walls*, 279 F.3d 518, 522 (7th Cir. 2002).

Nevertheless, the panel held that even when an officer obtains an unreliable identification that undermines the fairness of a plaintiff's trial, there is no §1983 liability against the officer for causing that due process violation, absent "unusual circumstances." Slip Op. at 5. That new rule is irreconcilable with this Court's precedent. Indeed, in *Holloway*, this Court treated *Alexander* as still binding law,

---

[1] Other circuits agree. *Gregory v. Louisville*, 444 F.3d 725, 747 (6th Cir. 2006); *Pace v. Des Moines*, 201 F.3d 1050, 1055 (8th Cir. 2000); *Grant v. Long Beach*, 315 F.3d 1081, 1090 (9th Cir. 2002); *Hernandez v. Terrones*, 397 F.App'x 954, 970 (5th Cir. 2010); *Antonio v. Moore*, 174 F.App'x 131, 135 (4th Cir. 2006). The only different conclusion is *Wray v. New York*, 490 F.3d 189, 192-94 (2d Cir. 2007), which relied on flawed causation analysis. *Infra* §B.

despite *Vega*. 43 F.4th at 766-67.[2] The panel, without acknowledging *Holloway*'s framing, implies that its silent overruling of these cases is justified by *Vega*. It is not.

*Vega* addressed whether the failure to provide *Miranda* warnings is alone actionable under §1983. *Vega*, 597 U.S. at 142-150. *Vega* observed that *Miranda* called for "prophylactic" warnings not required by the Constitution, so the Constitution is not violated simply because an un-*Mirandized* custodial statement is taken and introduced at a criminal trial. *Id.* at 142-51. As a result, the introduction of a statement at trial in contravention of *Miranda* cannot alone be the basis for a §1983 claim. *Id.* at 152. *Vega* did not purport to alter or eliminate other types of constitutional claims or §1983 claims, and its reasoning does not support the panel's extension here.

Indeed, *Vega* distinguished a failure to give *Miranda* warnings from a violation of the Fifth Amendment right to be free of compelled self-incrimination, observing that if the introduction of an un-*Mirandized* statement at trial "were tantamount to a violation of the Fifth Amendment, our answer would of course be different." *Id.* at 141. A long line of cases recognizes that, when police obtain an involuntary statement by illegal coercion that is used in a criminal case, they violate the Constitution. *Chavez v. Martinez*, 538 U.S. 760, 766-67 (2003); *id.* at 777 (Souter, J.) (concurring);

---

[2] *Holloway* determined that *Vega*'s relevance to the right to be free from unduly suggestive procedures "need not be resolved" because the defendants were entitled to qualified immunity. 43 F.4th at 766. *Holloway* acknowledged, however, that unlike *Vega*, a due process right is violated when unreliable identifications are used in criminal proceedings: "[P]erhaps the right to be free from suggestive identification procedures is a substantive right that flows from the Due Process Clauses; or perhaps, even though a constitutional right, it is just a trial right that is not violated unless there is a tainted identification at trial." *Id.* at 766.

*Brown v. Mississippi*, 297 U.S. 278 (1936). Because §1983 provides a cause of action for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws," of the United States, when a state actor causes a violation of the Fifth Amendment, they are liable under §1983. *Chavez*, 538 U.S. at 766-67 (2003). Accordingly, *Vega* emphasized that the violation of a constitutional right, which is actionable under §1983, is different than the violation of a prophylactic rule, which is not. 597 U.S. at 141-42.

Before the panel's opinion, this Court had already articulated a framework for analyzing identification-related due process claims that is consistent with the dichotomy between *Vega* and *Chavez*. In 2006, *Alexander* held that a §1983 claim based on an unduly suggestive lineup can proceed where there was evidence that corrupted identifications "made [the plaintiff's] trial unfair." *Alexander*, 433 F.3d at 555. Later, this Court held there was no liability for suggestive identification procedures when those identifications *were not used in the criminal case*. *Swanigan v. Chicago*, 881 F.3d 577, 583 (7th Cir. 2018). Corrupted identifications used in the criminal case violate due process; but corrupted identifications never used do not. *Holloway*, 43 F.4th at 766; *Coleman*, 925 F.3d at 347. In the latter situation, like *Vega*, there is no constitutional violation and no §1983 claim; in the former, like *Chavez*, there is a constitutional violation, and a §1983 claim can proceed.

Blackmon alleged a Due Process violation based on the introduction of evidence at his criminal trial, as established in *Simmons*, *Stoval*, and *Brathwaite*. Under

*Hensley* and *Alexander*, as *Vega* reaffirmed, Blackmon's claim is therefore actionable under §1983. The panel opinion, not *Hensley* and *Alexander*, is inconsistent with *Vega*.

**B. The Panel's Causation Analysis Conflicts with §1983, and Supreme Court, Seventh Circuit, and Sister Circuit Precedents.**

The panel's decision also contradicts established law. The panel concluded that "an investigating officer is not responsible for the decisions of the prosecutor and the judge" because "the police do not introduce evidence at trial." Slip.Op. at 3. That conclusion contradicts §1983, common law principles governing proximate causation, and Supreme Court, Seventh Circuit, and sister circuit precedents, all which hold that officers *are* liable for the reasonable and foreseeable results of their misconduct, even if they are not the final actor. Uncorrected, the panel's analysis would effectively immunize officers from most investigatory misconduct they might commit because, in the panel's words, the police "do not introduce evidence at trial." *Id.*

Section 1983 was enacted to enforce the Fourteenth Amendment against state action that violates federal law "whether that action be executive, legislative, or judicial[.]" *Mitchum v. Foster*, 407 U.S. 225, 240 (1972). The statutory text provides: "Every person who … *subjects*, *or causes to be subjected*, any citizen of the United States … to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law." 42 U.S.C. §1983. Reading this, *Monell v. New York Department of Social Services* said, "Congress did specifically provide that A's tort became B's liability if B 'caused' A to subject another to a tort." 436 U.S. 658, 692 (1978). An officer, then, may be liable for

violating due process trial rights of a criminal defendant, even when a prosecutor participates in the tort.

This conclusion is confirmed by "'common-law principles that were well-settled at the time of [§1983's] enactment,'" used to "defin[e] the contours of a claim under §1983." *Nieves v. Bartlett*, 587 U.S. 391, 405 (2019). Under general tort principles established when §1983 was enacted, if a state actor can reasonably foresee their conduct will cause injury, §1983 may render them liable. *Monroe v. Pape*, 365 U.S. 167, 187 (1961); *Milwaukee & St. P.R. Co. v. Kellogg*, 94 U.S. 469, 475 (1876) (proximate cause requires "that the injury was the natural and probable consequence of the negligence or wrongful act [and] ought to have been foreseen").

Supreme Court decisions hold the same rule applies when the chain of causation includes multiple actors. Proximate cause "requires only 'some direct relation between the injury asserted and the injurious conduct alleged,' and excludes only 'link[s] that [are] too remote, purely contingent, or indirect.'" *Staub v. Proctor Hospital*, 562 U.S. 411, 419 (2011). An "ultimate decisionmaker['s]" exercise of judgment between the initial actor and the injury does not "automatically render[] the link to the [initial actor's misconduct] 'remote' or 'purely contingent.'" *Id.* at 419-20. The later "decisionmaker's exercise of judgment is also a proximate cause," and it is "common for injuries to have multiple proximate causes." *Id.* "Nor can the ultimate decisionmaker's judgment be deemed a superseding cause … A cause can be thought 'superseding' only if it is a[n] [unforeseeable] 'cause of independent origin.'" *Id.* at 420.

Supreme Court §1983 decisions further illustrate that officers may be liable for violating core trial rights, even though their conduct occurs before the trial and other individuals, including prosecutors, complete the violation. *Malley v. Briggs* rejected the "no causation" argument adopted by the panel, holding that an officer submitting a facially invalid affidavit can be liable for violating the Constitution even though a judge later issues the arrest warrant. 475 U.S. 335, 345 n.7 (1986). "It should be clear . . . the District Court's 'no causation' rationale in this case is inconsistent with our interpretation of §1983," the Court said, "[s]ince the common law recognized the causal link between the submission of a complaint and an ensuing arrest, we read §1983 as recognizing the same causal link." *Id.*

Likewise, the officer who fabricated evidence and caused a pretrial seizure in *Manuel v. Joliet* was potentially liable even though a judge ordered the detainment, 580 U.S. 357, 366-69 (2017). And an officer who fabricates evidence before trial may be liable when that evidence is used at trial, even though the evidence is introduced by immune witnesses. *Rehberg v. Paulk*, 566 U.S. 356, 370 n.1 (2012). Or where a prosecutor introduces a coerced confession obtained by police. *Brown v. Mississippi*, 297 U.S. 278 (1936); *Chavez*, 538 U.S. at 766-67. Or where a state actor and municipality both proximately cause a single injury. *City of Canton v. Harris*, 489 U.S. 378, 385-92 (1989); *Monell*, 436 U.S. at 694-95; *see also Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152 (1970) (private actor conspired with police causing police to make arrest); *Dennis v. Sparks*, 449 U.S. 24, 27-28 (1980) (individual conspired with

judge who illegally entered court order). The panel ignored all of these Supreme Court cases.

As this Court put it nearly 40 years ago, "[i]f police officers have been instrumental in the plaintiff's continued confinement or prosecution, they cannot escape liability by pointing to the decisions of prosecutors or grand jurors or magistrates to confine or prosecute him." *Jones v. Chicago*, 856 F.2d 985, 994 (7th Cir. 1988). Since then, this Court has rejected the "no causation" argument adopted by the panel. *Whitlock v. Brueggemann* held, "The actions of an official who fabricates evidence that later is used to deprive someone of liberty can be both a but-for and proximate cause of the due process violation. Without the fabrication, the prosecuting attorney would have had no tainted evidence to introduce at trial." 682 F.3d 567, 583 (7th Cir. 2012). This Court refused to overturn *Whitlock* in *Fields v. Wharrie*, which held that an investigator cannot escape liability merely because fabricated evidence is introduced by someone else at trial. 740 F.3d 1107, 1113 (7th Cir. 2014). Most recently, in *Avery v. Milwaukee*, this Court reaffirmed the point, holding that in cases where an immune prosecutor introduces fabricated evidence, the resulting constitutional violation is not only the foreseeable result of the police fabrication of that evidence, it is "the whole point." 847 F.3d 433, 443 (7th Cir. 2017). The panel's decision overruled this Circuit precedent silently.

Lastly, the panel's decision creates a circuit split. The Sixth Circuit recognizes that identification procedures that "lead[] to a criminal conviction" are actionable:

It is true that an unduly suggestive identification does not, in and of itself, violate constitutional rights. It is also true that the prosecution's use of the

> identification at trial is a necessary intervening act for injury to occur and liability for any party to attach. It is not true, however, that the prosecutor's discretion to control the state's case at trial is such an intervening act to excuse Tarter from the "natural consequences" of his actions and therefore any tort liability. In constitutional-tort cases, "a man [is] responsible for the natural consequences of his actions."

*Gregory*, 444 F.3d at 746. Likewise, the Ninth Circuit recognizes that a prosecutor or judge's actions in admitting evidence is not a superseding cause. *Crowe v. San Diego*, 608 F.3d 406, 430 (9th Cir. 2010). Rehearing is warranted because the panel's causation analysis contradicts the statutory text of §1983, decisions by the Supreme Court, this Circuit, and creates a circuit split.

## C.   The Panel Decision Contradicts Established Qualified Immunity Law.

Absent an appellate decision holding police officers *liable* for damages under §1983 for conducting suggestive identification procedures, the panel held, Defendants were protected by qualified immunity. Slip Op. at 6-7. That holding conflicts with Supreme Court and Circuit precedents.

"[T]he relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his *conduct* was unlawful in the situation he confronted." *Saucier v. Katz*, 533 U.S. 194, 202 (2001). "The issue is not whether issues concerning the availability of a *remedy* are settled," but rather, "whether the official defendant's *conduct* violated the clearly established constitutional right." *Armstrong v. Daily*, 786 F.3d 529, 555-56 (7th Cir. 2015); *see also Taylor v. Ways*, 999 F.3d 478, 491 (7th Cir. 2021); *Fields v. Wharrie*, 740 F.3d 1107, 1114 (7th Cir. 2014). The panel was wrong to require a prior civil case imposing liability to defeat qualified immunity.

The question of whether it was clearly established that Defendants' conduct was illegal begins and ends with the Supreme Court, which established decades before Blackmon's conviction that the introduction at trial of an identification "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification" violates the Constitution. *Simmons*, 390 U.S. at 384; *Stovall v. Denno*, 388 U.S. 293, 302 (1967). *Simmons* (and *Stoval*) placed Defendants on notice that their conduct—the use of unduly suggestive identification procedures that (foreseeably) tainted Blackmon's trial—was unconstitutional. *See Armstrong*, 786 F.3d at 556 (landmark criminal cases gave defendants notice that misconduct during criminal investigation violated due process).

The contrary conclusion, again, creates a circuit split. *See, e.g., Gillispie v. Miami Twp., Ohio*, 18 F.4th 909, 918 n.2 (6th Cir. 2021) ("[A]s early as 1967, it was clearly established that a person the police suspected of committing a crime had "a constitutional right to be free from identification procedures 'so unnecessarily suggestive and conducive to irreparable mistaken identification' that the identification's use violates due process" (quoting *Gregory*, 444 F.3d at 746); *Good v. Curtis*, 601 F.3d 393, 398-99 (5th Cir. 2010)( "[A] police officer's knowing efforts to secure a false identification by fabricating evidence or otherwise unlawfully influencing witnesses is not entitled to qualified immunity."); *Brewster v. Shasta Cnty.*, 27 F.App'x 908, 912-13 (9th Cir. 2001) (same).

The panel erroneously concluded otherwise. Rather than ask whether precedent put Defendants on notice that their *conduct* was unconstitutional, the

panel asked whether it was "clearly established that investigating officers could be *personally liable* under §1983 for conducting a suggestive lineup." Slip Op. at 6. That conclusion conflicts with Supreme Court and Circuit precedent.

## CONCLUSION

For the foregoing reasons, the Court should grant the petition.

Respectfully submitted,

/s/ Ronald S. Safer

Ronald S. Safer (rsafer@rshc-law.com)
RILEY SAFER HOLMES & CANCILA LLP
1 South Dearborn Street, Suite 2200
Chicago, Illinois 60603
Telephone:  312.471.8700
Facsimile:  312.471.8701

*Attorneys for Appellee Eric Blackmon*

**CERTIFICATE OF COMPLIANCE**

In accordance with Fed. R. App. P. 32(g)(1), I certify that the foregoing brief complies with the type-volume limitation provided by Fed. R. App. P. 32(a)(7)(B)(i) and Cir. R. 32(c). This brief contains 3896 words, beginning with the words "Rule 40(b)(2) Statement" and ending with the words "grant the petition" in the Conclusion section, as recorded by the word count of the Microsoft Word processing system used to prepare the brief.


/s/    Ronald S. Safer

## CERTIFICATE OF SERVICE

I certify that on April 4, 2025, I electronically filed a copy of the foregoing document using the Court's CM/ECF system, which will automatically generate notice of this filing to all Counsel of Record.


/s/ Ronald S. Safer